UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| L.T., on Behalf of Herself and as Next Friend to Her Child, C.T.; E.W., on Behalf of Herself and as Next Friend to Her Child, Z.K.; M.C., on Behalf of Herself and as Next Friend to Her Child, G.L.; J.M., on Behalf of Herself and as Next Friend to Her Children, J.M.1, T.M., and D.M.; C.B, on Behalf of Herself and as Next Friend to Her Child, T.O.; K.D., on Behalf of Herself and as Next Friend to Her Child, V.D., <br><br> Plaintiffs, <br><br> -against- <br><br> New York City Department of Education; The Board of Education of the City School District of the City of New York; Chancellor David Banks, In His Official Capacity, The City of New York, <br><br> Defendants. | Civ. No. 23-cv-9826 <br><br> COMPLAINT |

PRELIMINARY STATEMENT

1. This is an action on behalf of children with disabilities and their parents who have filed impartial due process hearings under the IDEA, 20 U.S.C. § 1400, *et seq*. and who are entitled to, *inter alia*, the protections of the stay-put provisions of the IDEA, 20 U.S.C. § 1415(j).

JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's Federal claim for reasonable attorneys' fees and costs awarded to a prevailing party in an administrative proceeding under the IDEA pursuant to 20 U.S.C. § 1415(i)(3)(A), 42 U.S.C. § 1988, and as an action raising a Federal question under 28 U.S.C. § 1331.

3. Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) as the judicial district in which Defendants are situated and/or reside.

## PARTIES

4. L.T. is the parent of C.T., a child with a disability under the IDEA.

5. E.W. is the parent of Z.K., a child with a disability under the IDEA.

6. M.C. is the parent of G.L., a child with a disability under the IDEA.

7. E.E.G. is the parent of Y.A., child with a disability under the IDEA.

8. C.B. is the parent of T.O., a former child with a disability under the IDEA.

9. J.M. is the parent of J.M.1, T.M., and D.M., child with disabilities under the IDEA.

10. K.D. is the parent of V.D., a former child with a disability under the IDEA.

11. All plaintiffs who are children with disabilities under the IDEA are twenty-one years old and continue to be eligible for special education in New York because they have not yet reached the age of twenty-two.

12. None of the plaintiffs who are current and former children with disabilities have earned a regular high school diploma.

13. All plaintiffs who are current or former children with disabilities are also eligible for protection under Section 504 and the ADA.

14. All plaintiffs live within one of the five boroughs in New York City.

15. Plaintiff current and former children with disabilities sue under pseudonyms using initials to preserve the privacy and confidentiality of sensitive medical, educational, and disability-related information, that would otherwise be protected under HIPAA, the IDEA and the Family Educational Rights and Privacy Act of 1974 ("FERPA").

16. Plaintiff parents also sues under a pseudonym using initials because disclosure of their identities would necessarily disclose the identity of Plaintiff students.

17. The IDEA permits, but does not require, States to transfer the rights conferred by the Act to students when they reach the age of majority under State law. 20 U.S.C. § 1415(m)(1). New York State law does not provide for the transfer of IDEA rights to students when they reach the age of majority. *See generally* N.Y. Educ. L. § 4401, *et seq.*; 8 N.Y.C.R.R. § 200, *et seq.* Consequently, the Parent Plaintiffs remain the proper parties to assert claims concerning their children's rights even though the children are already aged eighteen.

18. Further, all student Plaintiffs here lack the capacity to bring suit on their own without a representative and/or next friend.

19. Upon information and belief, according to Defendants, THE NEW YORK CITY DEPARTMENT OF EDUCATION ("Department" or "DOE") is the official body charged with the responsibility of developing policies with respect to the administration and operation of the public schools in the City of New York, including programs and services for students with disabilities. N.Y. Educ. Law § 2590-g (McKinney 1980). It is a recipient of federal financial assistance.

20. The DOE's central office is located in New York County.

21. Defendant, THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK ("the Board of Education" or "the Board"), was or continues to be the official body charged with the responsibility of developing policies with respect to the administration and operation of the public schools in the City of New York. It is a recipient of federal financial assistance.

22. Defendant, DAVID BANKS ("the Chancellor"), is the Chancellor of the New York City School District and is entrusted with the specific powers and duties set forth in N.Y. Educ. Law § 2590-h. He is being sued in his official capacity.

23. The DOE, Board and Chancellor are referred to as "Defendants."

24. All Defendants either jointly and/or individually constitute the "Local Educational Agency" under the IDEA.

25. Defendant, CITY OF NEW YORK (the "City"), is a municipal corporation and a political subdivision of the State of New York. The City's address is c/o Office of the Corporation Counsel, 100 Church Street, New York, New York 10007. The City is the payor-in-interest for all special education services, and is responsible for the Defendants' budget.

## LEGAL FRAMEWORK

26. The IDEA guarantees that all eligible children with disabilities, ages three through twenty-one, must be offered a FAPE. 20 U.S.C. § 1412(a) (1).

27. A FAPE must meet each student's "unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d) (1) (A)-(B).

28. A FAPE must "include an appropriate . . . secondary school education in the State involved"; and (d) be provided in conformity with an IEP. *See* 20 U.S.C. §§ 1401(9), 1414(d)(2)(A); 8 N.Y.C.R.R. § 200.4(e)(1)(ii).

29. To be entitled to a FAPE, a child must have one or more of thirteen disabling conditions and, by reason of his/her disability, require "special education" and "related services." 34 C.F.R. § 300.8(a)(1).

30. Defendants are responsible for providing a FAPE to all eligible children in New York City and for promulgating policies and procedures in accordance with the IDEA.

31. Every child with the designated disability classifications is entitled to an Individualized Education Program, or "IEP" and the LEA (here, Defendants) must provide an IEP which must be individually tailored to each student and is meant to serve as a blueprint for each child's special education services. 20 U.S.C. § 1414(d).

32. By the beginning of each school year, Defendants must have an IEP in place that offers a FAPE to each eligible child. 20 U.S.C. § 1414(d)(2).

33. The IDEA and state and federal regulations prescribe, in detail, the process for developing IEPs and their contents. 20 U.S.C. § 1414(d)(1)(A), (d)(2); 34 C.F.R. §§ 300.320(a)(2)-(3); 300.324; N.Y. Educ. Law § 4401, *et seq.;* and 8 N.Y.C.R.R.§ 200.4(d)(2)(iii).

34. Defendants are obligated to make decisions about IEPs, services and placements based on a student's individual needs, and not on policies, procedures or availability of resources.

35. The Defendants are required to establish and maintain procedures in accordance with the IDEA to "ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE]." 20 U.S.C. §1415(a).

36. One of the IDEA's due process rights is the right to file a due process complaint ("DPC") "with respect to any matter relating to the identification, evaluation, or educational placement of [a] child" or the provision of FAPE to a child. 20 U.S.C. §1415(b)(6)(A).

37. Thereafter, a parent "shall have an opportunity for an impartial due process hearing." 20 U.S.C. §1415(f)(1)(A).

38. As soon as a due process complaint ("DPC") requesting a hearing is filed, Section 1415(j) of the IDEA requires that the Defendants ensure that they provide or fund the provision of "stay-put" services that constitutes the child's "last agreed upon-placement."

39. The IDEA mandates that the student's "stay-put" placement and services be provided until a final, unappealed decision is reached in the case. 20 U.S.C. §1415(j); 34 C.F.R. § 300.518.

40. A student's "stay-put" rights (also called "pendency") can be established by a last agreed upon or implemented IEP, a final, unappealed order of an impartial hearing officer, the

State Review Officer, or the "operative" placement that was being provided as of the date the parent filed the DPC.

41. A student's "pendency" can also be changed by a full or partial agreement between the parties.

42. Pendency rights are supposed to be automatic and are unconditional, without regard to merit.

43. That is, immediately upon filing of a DPC, Defendants are required to provide and/or fund the "last agreed upon placement" and services.

44. When a child with a disability is not receiving his or her special education and related services, the child is suffering irreparable harm.

45. When a child with a disability is at risk of losing his or her special education and related services, the child is facing irreparable harm.

46. Children who are entitled to pendency and/or FAPE who are being denied FAPE and pendency are suffering irreparable harm.

### PLAINTIFFS ARE ENTITLED TO A FAPE UNTIL THEY TURN 22

47. The IDEA mandates that a "free and appropriate public education" shall be "available to all children with disabilities . . . between the ages of 3 and 21, inclusive . . . ." 20 U.S.C. § 1412(a).

48. Eligibility under the IDEA for special education and related services ends, therefore, when a student reaches that age of 22. *St. Johnsbury Acad. v. D.H.*, 240 F.3d 163, 168-69 (2d Cir. 2001) ("If the word 'inclusive' is to mean something, as it must, it means that the relevant period begins on a child's third birthday and ends on the last day of his 21st year (which culminates in his 22nd birthday).").

49. States may limit age eligibility for special education students, however, *only* to the extent it is limited for public education generally.

50. The IDEA provides that:

The obligation to make a [FAPE] available to all children with disabilities does not apply with respect to children—(i) aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges . . .

20 U.S.C. § 1412(a)(1)(B).

51. According to the IDEA's legislative history, this exception was intended to ensure equality of treatment between disabled and non-disabled students and does not apply "where a state does now in fact provide or assure the provision of free public education to non-handicapped children in these age groups." S. Rep. No. 94-168, 1975 U.S.C.C.A.N. 1425, 1442-42 (1975).

52. To determine whether a state may terminate special education services before the age of 22, a court must look to that state's "law" or "practice" concerning public education in general (*i.e.*, not law or practice specific to special education) for individuals in that same age range.

New York State Law is Not Inconsistent with Provision of Education Up to Age 22

53. New York law also directs the districts and other entities under the NYSED's supervision and control to provide programs of public education, including elementary and secondary education, to adults. N.Y. Educ. Law § 4604.

54. New York Law provides that districts deliver adult education, including education to prepare individuals between the age of twenty-one and twenty-two for a high school equivalency degree, as well as vocational education.

55. In *A.R. v. Connecticut State Board of Education*, 5 F.4th 155 (2d Cir. 2021), the Second Circuit held that Connecticut was required to provide a FAPE to all children up to the age of twenty-two. In doing so, the Court held that public education includes services provided (a) "at public expense with significant state or local governmental funding"; (2) "under the administration, supervision or oversight of a state educational agencies"; and (3) "with the objective of educating students up to the level of academic proficiency associated with the completion of secondary school." *A.R.*, 5 F.4th at 157.

56. In issuing the *A.R.* opinion, the Second Circuit joined the Ninth Circuit, which issued a similar ruling in *E.R.K. v. State of Hawaii Dep't of Educ.*, 728 F.3d 982 (9th Cir. 2013), finding that a FAPE had to be provided to students in Hawaii up to the age of twenty-two due to the provision of adult education to students between ages twenty-one and twenty-two and the First Circuit in *K.L. v. Rhode Island Board of Education*, 907 F.3d 639 (1st Cir. 2018), which issued a similar determination about the right to FAPE in Rhode Island.

57. After the Second Circuit's opinion in *A.R.*, on July 6, 2023, the general counsel's office for the New York State Education Department ("NYSED") issued a Formal Opinion Of Counsel relating to the applicability of the opinion in *A.R.* in New York ("NYSED Opinion"). A copy of the NYSED Opinion is attached hereto as Exhibit A.

58. The NYSED Opinion concluded that districts were required to provide a FAPE up to a student's twenty-second birthday, notwithstanding contrary state law and/or regulations.

59. Moreover, the NYSED Opinion advised that education should extend beyond that date, depending on the student's birthday:

> The fact that students' 22nd birthdays may fall at any point during a school year, however, is a complication not addressed by the A.R. decision. While not required by the decision, SED's Office of Special Education recommends that school districts consider providing such services through the end of the school year in which the student turns 22 or upon receipt of a high school diploma, whichever occurs first.[1]

60. New York State and New York City law and regulations limit the provision of FAPE until the conclusion of the school year in which that resident turns 21, or upon receipt of a Regents or local high school diploma, except that students who turn twenty-one during the summer months can receive services during the six-week extended school year program provided for under New York Law.

## EXHAUSTION OF REMEDIES IS NOT REQUIRED

61. Exhaustion of administrative remedies is not required before this Court may exercise jurisdiction over Plaintiffs' claims.

62. As the Second Circuit has recognized, exhaustion is not required where resort to administrative remedies would be futile and such futility is established where the plaintiff challenges the validity of a state law or regulation. *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148 (2nd Cir. 1992).

63. It would be futile to ask a hearing officer or the State Review Officer to ignore a state law and the NYSED's own regulation implementing that law.

---

[1] *Id.* at fn 1.

64. Further, Plaintiffs raise systemic claims and challenge policies. Administrative hearing and appeals officers in New York lack jurisdiction to address systemic issues and or matters of policy.

65. Additionally, Plaintiffs are all facing irreparable harm and for that additional reason, exhaustion would not be required.

66. Several Plaintiffs also seek to implement stay-put rights pursuant to 20 U.S.C. §1415(j) which are not required to be exhausted.

## FACTS CONCERNING INDIVIDUAL PLAINTIFFS

Facts Concerning C.T.

67. C.T. has been diagnosed with, *inter alia*, Autism.

68. He was eligible for an IEP and a FAPE in New York City

69. C.T. turned twenty-one during the 2022-2023 10-month school year and, since July 1, 2023, has not been receiving a FAPE.

70. L.T. has a pending impartial hearing for C.T. pursuant to which C.T. is otherwise entitled to pendency in a non-approved private school for children with Autism, as well as an extended-day program of after-school applied behavior analysis ("ABA") and related services.

71. However, Defendants terminated C.T.'s eligibility for special education services as of June 30, 2023.

72. The DOE did not offer an IEP, placement or stay-put placement to C.T. for the 2023-2024 school year.

73. The private school did not plan for his return, as his eligibility was scheduled to end in 2022-2023 and there is no seat available for him.

74. L.T. has a pending hearing for C.T. and he is entitled to pendency.

Facts Concerning Z.K.

75. Z.K. is a child with a disability under the IDEA and is eligible for an IEP and a FAPE in New York City.

76. Z.K. turned twenty-one during the 2022-2023 10-month school year and, since July 1, 2023, has not been receiving a FAPE.

77. Defendants terminated Z.K.'s eligibility for special education services as of June 30, 2023.

78. The DOE did not offer an IEP, placement or stay-put placement to Z.K. for the 2023-2024 school year.

79. Z.K. has a compensatory bank but no pendency or FAPE in place.

Facts Concerning G.L.

80. G.L. is a child with a disability under the IDEA and is eligible for an IEP and a FAPE in New York City.

81. G.L. turned twenty-one during the 2023 summer session.

82. The DOE did not offer an IEP, placement or stay-put placement to G.L. for the 2023-2024 school year.

83. M.L.C. has a pending impartial hearing for G.L. pursuant to which G.L. is entitled to pendency in the Cooke Center, a non-approved private school for children with disabilities and transportation.

84. That private school is willing to keep G.L. for the 2023-2024 school year, provided the DOE is liable for the tuition under pendency and legally responsible for providing a FAPE to G.L. during the 2023-2024 school.

85. Defendants terminated G.L.'s eligibility for special education services as of August 2023.

86. However, G.L. is out of school as the Defendants have not indicated whether they will agree to fund pendency at Cooke.

87. M.L.C. has a pending hearing for G.L. and he is entitled to pendency.

Facts Concerning J.M.1, T.M. and D.M.

88. J.M.1, T.M. and D.M. are triplets with disabilities under the IDEA and are eligible for an IEP and a FAPE in New York City ("the Triplets").

89. The Triplets turned twenty-one during the 2022-2023 10-month school year and, Defendants terminated their eligibility for special education services as of June 30, 2022.

90. Since July 1, 2023, the Triplets have not been receiving a FAPE.

91. The DOE did not offer an IEP, placement or stay-put placement to any of the Triplets for the 2023-2024 school year.

Facts Concerning T.O.

92. T.O. was a child with a disability under the IDEA.

93. T.O. turned twenty-one in January 2021 and the Defendants terminated her eligibility for special education services as of June 30, 2021.

94. However, T.O. was entitled to a FAPE until at least January 2022.

95. The DOE did not offer an IEP or placement to T.O. for the 2021-2022 school year and she did not receive a FAPE.

96. V.D. was a child with a disability under the IDEA.

97. V.D. turned twenty-one in November 2020 and the Defendants terminated her eligibility for special education services as of June 30, 2021.

98. However, V.D. was entitled to a FAPE until at least the end of November of 2021.

99. The DOE did not offer an IEP or placement to V.D. for the 2021-2022 school year and she did not receive a FAPE.

Plaintiffs Do Not Have to Exhaust Their Claims

100. Plaintiff students were and/or are entitled to a FAPE up to their twenty-second birthday.

101. Any plaintiff students who have pending impartial hearings are entitled to pendency or, if that pendency is not available, they are entitled to substantially equivalent services.

102. Plaintiff students and former students are entitled to compensatory education.

103. Claims that do not have to be exhausted are subject to a three-year statute of limitations.

The Statute of Limitations For Claims was Tolled Between March 20, 2023 and November 3, 2020

104. Governor Andrew Cuomo tolled the statute of limitations for all New York statutes as a result of the COVID pandemic.

105. Executive Order 202.08 dated March 20, 2020, provided that any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled from the date of this executive order.

106. Multiple Executive Orders continued the suspensions and modifications of law through November 3, 2020, ultimately tolling the statute of limitations for a total of 228 days.

107. Courts adopt the three-year statute of limitations in N.Y. Civ. P.L. § 214(2) for IDEA attorney's fees claims, as the IDEA does not include a limitations period for filing such

claims. *Robert D. v. Sobel*, 688 F. Supp. 861 (S.D.N.Y. 1988).

108.  As federal Courts adopt state limitations periods, New York State tolling rules apply. *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478 (1980).

109.  Accordingly, the applicable statute of limitations in New York relating to attorney's fees and all other claims that may have had a three-year statute of limitations due to the date on which the impartial hearing decision in this case was issued were tolled by the New York State Governor until November 4, 2023.

110.  Since November 4, 2023, fell on a weekend, the statute of limitation falls on the next business day, which is Monday, November 6, 2023.

111.  The payment system for the SDNY was not working on November 3, 2023 after 9 p.m. or on November 4, 2023, even though the notice on the SDNY website indicated that the payment system would not be unavailable until 4 p.m. on November 4, 2023.

112.  None of the claims brought herein are time-barred.

Plaintiffs are Entitled to Legal Fees

113.  Plaintiffs are entitled to reasonable legal fees for the instant action.

114.  The fees and costs charged by Plaintiffs' counsel are consistent with market rates for the legal services performed, considering counsels' experience and expertise and the complexity of the issues.

CLAIMS

FIRST CLAIM
THE IDEA

115.  Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

116. Plaintiffs have been denied a FAPE because a FAPE has not been made available to them beyond the end of the year in which they turn twenty-one and until such time as they turn twenty-two.

117. The Plaintiffs entitled to pendency, have been denied stay-put rights, if they have reached the end of the school year in which they turned twenty-one and continue to have a pending impartial hearing pursuant to which they have stay-put rights until such time as they turn or will turn twenty-two.

118. Defendants have failed to implement a citywide change in policy, procedure and/or practice to ensure FAPE to children who are not yet twenty-two, but who have reached the end of the school year in which they turned twenty-one.

119. Defendants' application of blanket policies, practices procedures violate the IDEA.

120. Defendants' failure to implement appropriate policies, procedures and practices to ensure timely and continued implementation of Plaintiffs' pendency rights violates the IDEA.

121. Defendants' failure to implement appropriate policies, procedures and practices to ensure implementation of resolution agreements violates the IDEA.

122. Defendants' failure to ensure adequate comparable services for Plaintiffs whose pendency is no longer available violates the IDEA.

123. Defendants' conduct results in a wholesale denial of FAPE to Plaintiffs.

<u>SECOND CLAIM</u>
SECTION 504 OF THE REHABILITATION ACT

124. Plaintiff repeats and re-allege the allegations of all the above paragraphs as if fully set forth herein.

125. Defendants' conduct is knowing, intentional, reckless, and gross.

126. Plaintiffs are qualified individuals with disabilities entitled to protection under Section 504.

127. Defendants discriminated against Plaintiffs under Section 504 by, *inter alia*, denying him reasonable accommodations, adopting systemic policies, procedures and practices that violate Plaintiffs' rights under the IDEA and New York State law, and engaging in widespread and pervasive violations of the IDEA and New York State Education law.

128. Defendants discriminated against Plaintiffs under Section 504 by, *inter alia*, committing extensive, repeated, gross, knowing and reckless violations of multiple provisions of the IDEA and New York State law.

THIRD CLAIM
42 U.S.C. § 1983

129. Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

130. Defendants have violated 42 U.S.C. §1983 by depriving Plaintiffs, under color of state law, of their rights, privileges, and immunities under federal statutory and constitutional law.

131. By implementing, promulgating, and continuing to enforce and/or effectuate policies, practices, and customs as alleged herein, Defendants have denied Plaintiffs' the educational services to which they are entitled under the IDEA and New York law, in violation of 42 U.S.C. § 1983.

132. By failing to supervise and train their employees and agents concerning the federal and state laws and policies concerning general and special education services, Defendants have violated 42 U.S.C. § 1983.

133. By failing to ensure that pendency is timely implemented and secured, Defendants violated 42 U.S.C. §1983.

134. The Defendants violated Plaintiff's rights under 42 U.S.C. § 1983 by failing to have adequate policies, procedures, protocols, and training to ensure that the provisions of the IDEA and Section 504 referenced herein were complied with, which deprived Plaintiffs of their right to a free and appropriate education under federal and state law.

135. Under color of state law, the Defendants deprived Plaintiffs of their right to special education services educational services afforded to him under New York State law, in violation of the Fourteenth Amendment of the U.S. Constitution.

136. As a direct and proximate result of the Defendants' misconduct, Plaintiffs have suffered and will continue to suffer harm, unless Defendants are enjoined from their unlawful conduct.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

i. Assume jurisdiction over this action;

ii. Issue Emergency Injunctive Relief on behalf of the individual children and parent Plaintiffs who seek pendency and a FAPE;

iii. Issue a Declaratory Judgment on behalf of the Plaintiffs that the policies, procedures, and practices as alleged herein violate the applicable federal laws;

iv. Issue a Final Judgment directing Defendants to modify their policies, practices and procedures that violate the laws or result in a deprivation of FAPE and pendency rights;

v. Award compensatory education, damages and equitable relief for the deprivation of FAPE and pendency;

vi.     Award Plaintiffs attorneys' fees and costs incurred with respect to this action; and

vii.     Award such other, and further, relief as to the Court may seem just and proper.

Dated:     November 6, 2023
                New York, New York

                                     Respectfully submitted,
                                     Elisa Hyman, Esq.

                                     By_____
                                     Elisa Hyman, Esq.
                                     The Law Office of Elisa Hyman
                                     1115 Broadway, 12th Floor
                                     New York, NY 10010
                                     Phone: (646) 572-9064
                                     Fax: 646-572-9065
                                     elisahyman@gmail.com
                                     *Attorneys for Plaintiff*